UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────────

LEANN L. TERRANCE

                        Plaintiff,

        v.

NANCY A. BERRYHILL, [1] Commissioner of
Social Security,

                        Defendant.

**REPORT
and
RECOMMENDATION**

**14-CV-708T(F)**

─────────────────────────────────

APPEARANCES:        LAW OFFICES OF LEWIS L. SCHWARTZ
                        Attorneys for Plaintiff
                        LEWIS L. SCHWARTZ, of Counsel
                        1231 Delaware Avenue
                        Suite 103
                        Buffalo, New York 14209

                        JAMES P. KENNEDY
                        ACTING UNITED STATES ATTORNEY
                        Attorney for Defendant
                        JOSHUA LENARD KERSHNER
                        Assistant United States Attorney, of Counsel
                        Federal Centre
                        138 Delaware Avenue
                        Buffalo, New York 14202, and

                        STEPHEN P. CONTE
                        Regional Chief Counsel
                        United States Social Security Administration
                        Office of the General Counsel, of Counsel
                        26 Federal Plaza
                        Room 3904
                        New York, New York 10278

---

[1] Nancy A. Berryhill became Acting Commissioner of the Social Security Administration on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn Colvin as the defendant in this suit. No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

**JURISDICTION**

This action was referred to the undersigned by Honorable Richard J. Arcara on May 12, 2015.[2] (Doc. No. 19).  The matter is presently before the court on motions for judgment on the pleadings, filed on May 8, 2015, by Plaintiff (Doc. No. 8), and on October 14, 2015, by Defendant (Doc. No. 16).

**BACKGROUND**

Plaintiff Leann Terrance, ("Plaintiff" or "Terrance"), seeks review of Defendant's decision denying her Supplemental Security Income ("SSI") ("disability benefits") under, Title XVI of the Social Security Act ("the Act").  In denying Plaintiff's application for disability benefits, Defendant determined that Plaintiff had the severe impairments of diabetes mellitus, obesity, degenerative changes in the lumbar spine, knees, and right shoulder, migraine headaches, plantar fasciitis of both feet, and major depressive disorder, but that Plaintiff's carpal tunnel syndrome status post bilateral release, diabetic neuropathy, neck pain, and seizures were not severe impairments, and that Plaintiff does not have an impairment or combination of impairments within the Act's definition of impairment.  (R. 15-17).[3] Defendant further determined that Plaintiff had the residual functional capacity ("RFC"), to perform light work with the limitations of being able to change positions at least every 30 minutes during the workday, unable to work with the general public, no more than frequent contact with coworkers and supervisors, and only simple, routine work with no more than occasional changes in the work setting.  (R.181).

---

[2] This action was re-assigned to Hon. Michael A. Telesca on June 8, 2017.  (Doc. No. 19).
[3] "R" references are to the page numbers of the Administrative Record submitted in this case for the Court's review

As such, Plaintiff was found not disabled, as defined in the Act, at any time from the alleged onset date through the date of the Administrative Law Judge's decision on March 21, 2013.

## PROCEDURAL HISTORY

Plaintiff filed her application for disability benefits on August 10, 2011 (R. 162-68), that was initially denied by Defendant on December 5, 2011, and, pursuant to Plaintiff's request filed January 18, 2012 (R. 122-24), a hearing was held before Administrative Law Judge Donald T. McDougall ("McDougall" or "the ALJ"), on March 1, 2013, in Buffalo, New York.  (R. 33-62).  Plaintiff, represented by Jessica Welker, Esq. ("Welker"), appeared and testified at the hearing (R. 37-54), along with vocational expert ("VE") Janikowski ("Janikowkski" or "VE").  The ALJ's decision denying Plaintiff's claim was rendered on March 21, 2013.  (R. 13-27).  Plaintiff requested review by the Appeals Council, and the ALJ's decision became Defendant's final decision when the Appeals Council denied Plaintiff's request for review on June 26, 2014.  (R. 1-6).  This action followed on August 26, 2014, with Plaintiff alleging that the ALJ erred by failing to find her disabled.  (Doc. No. 1).

On May 8, 2015, Plaintiff filed a motion for judgment on the pleadings ("Plaintiff's motion"), accompanied by a memorandum of law (Doc. No. 8) ("Plaintiff's Memorandum").  Defendant filed, on October 14, 2015, Defendant's motion for judgment on the pleadings ("Defendant's motion"), accompanied by a memorandum of law (Doc. No. 16) ("Defendant's Memorandum").  Plaintiff filed a reply to Defendant's motion on the pleadings on November 4, 2015 ("Plaintiff's Reply Memorandum") (Doc.

No. 17).  Oral argument was deemed unnecessary.  Based on the following, Plaintiff's

motion for judgment on the pleadings should be DENIED; Defendant's motion for

judgment on the pleadings should be GRANTED.


### FACTS[4]

Plaintiff Leann Terrance, ("Terrance" or "Plaintiff"), was born on July 7, 1965, and

completed high school.  (R. 183, 205).  Plaintiff alleges that she is not able to work

because she has difficulty concentrating as a result of her medication, and is unable to

stand for long periods of time, walk, bend, lift, and remember things.  (R. 42).

Relevant to the period of disability in this case,[5] on November 3, 2011,

Psychologist Sandra Jensen, Ph.D., ("Psychologist Jensen"), completed a psychiatric

evaluation on behalf of the Social Security Administration  that showed Plaintiff able to

engage in all activities of daily living, and no limitations to following and understanding

instructions and simple directions, performing simple tasks, independently, maintaining

concentration and attention, maintaining a regular schedule, learning new tasks, and

performing complex tasks, and relating adequately with others.  (R. 351).  Dr. Jensen

diagnosed Plaintiff with Axis I[6] depressive disorder not otherwise specified ("NOS"), Axis

---

[4] Taken from the pleadings and the administrative record.
[5] SSI benefits are payable in the month following the month the application for benefits was filed.  *See* 20 C.F.R. § 416.335.  The period of review in this case is therefore September 1,  2011 until March 21, 2013, the date of the ALJ's determination.
[6] The DSM-IV multiaxial scale is used to assess an individual's mental and physical condition on five axes, each of which refers to a different class of information: Axis I, clinical disorders; Axis II, personality disorders; Axis III, general medical conditions; Axis IV, psychosocial and environmental stressors; and Axis V, global assessment of functioning.  American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders-IV-TR* ("DSM-IV"), at 27 (4th ed. 2000).

II denied, and Axis III neuropathy, diabetes, hypercholesterolemia, and carpal tunnel syndrome.  (R. 348-51).

On November 30, 2011, Samuel Balderman, M.D. ("Dr. Balderman"), completed an internal medical examination on Plaintiff on behalf of the Social Security Administration that showed Plaintiff with a normal gait, ability to walk on her heels and toes, and a normal physical examination.  (R. 353-55).  An X-ray of Plaintiff's lumbar spine was normal.

On December 1, 2011, Michael Peril, M.D. ("Dr. Peril"), completed a residual functional capacity assessment on Plaintiff without examination, and opined that Plaintiff was limited in fingering and fine manipulation, and should be restricted from frequent turning, twisting, pushing, and pulling with her hands.  (R. 443).  Dr. Peril opined that Plaintiff was able to sit, stand and walk for six hours in and eight-hour day, lift and carry 20 pounds occasionally, and frequently lift or carry 10 pounds.  (R. 442).

That same day, J. Echevarria, M.D. ("Dr. Echevarria"), a state agency review psychiatrist, completed a psychiatric review technique based on Plaintiff's medical file, and opined that Plaintiff would able to perform simple, low contact job tasks, and had moderate limitations to maintaining social functioning, maintaining concentration, persistence, and pace, mild limitations to completing activities of daily living, and no episodes of deterioration of extended duration.  (R. 358-74).

On December 9, 2011, Hak J. Ko, M.D. ("Dr. Hak J. Ko"), completed a psychiatric evaluation on Plaintiff and diagnosed Plaintiff with major depression, recurrent, diabetes, dyslipidemia (high cholesterol), and chronic pain.  (R. 563).  Dr. Hak J. Ko

4

noted that Plaintiff was somewhat disheveled, withdrawn and preoccupied, with low non-productive speech, and displayed a somewhat blunted affect. *Id.*

On December 20, 2011, Plaintiff sought treatment from Niagara Falls Memorial Medical Center ("Niagara Memorial") emergency room for neck pain. (R. 383).

On December 27, 2011, Plaintiff returned to Niagara Memorial where upon admitting to thoughts of suicide, Plaintiff was deemed questionably suicidal, and was admitted involuntarily for psychiatric observation. (R. 391). Upon admission, Plaintiff suffered a seizure and was treated for a scalp laceration. (R. 413). Nyathappa Anand, M.D. ("Dr. Anand"), prescribed Dilantin (anti-seizure) medication, and provided treatment for Plaintiff's seizures from January 13, 2012 until November 15, 2012. (R. 497-500).

On February 8, 2012, Timothy Brimmer, a physician's assistant at Niagara Memorial ("P.A. Brimmer"), noted that Plaintiff reported knee joint pain. (R. 457). Shelley S. Bath, M.D. ("Dr. Bath"), reviewed an X-ray of Plaintiff's right knee that showed osteoarthritis in Plaintiff's patellofemoral join space. (R. 437).

On March 7, 2012, Virginia Finch, a nurse practitioner at Niagara Memorial ("N.P. Finch"), completed a psychiatric evaluation on Plaintiff and diagnosed Plaintiff with major depressive disorder with psychotic features, rule out schizoaffective disorder, depressed type, deferred diagnosis on Axis II, Axis III type two diabetes, high cholesterol, seizure disorder, chronic pain, and neuropathy, and Axis IV limited access to healthcare and social network, financial stressors and physical health concerns. (R. 565).

On April 26, 2012, Anita Chaudhuri, M.D. ("Dr. Chaudhuri"), an endocrinologist with Niagara Memorial, completed a consultative examination on Plaintiff, advised Plaintiff on proper nutrition and diet, and changed Plaintiff's diabetes medication.  (R. 519-20).

On May 12, 2012, Dr. Peril completed a case analysis on Plaintiff's medical records, and opined that no new evidence altered Plaintiff's residual functional capacity assessment.  (R. 440).

On June 8, 2012, N.P. Finch completed a follow-up examination on Plaintiff and opined that Plaintiff showed intermittent depression with financial stressors, and evaluated Plaintiff with goal oriented thought content, fair insight and judgment, intact recent and remote memory, and no expressed paranoia.  (R. 570).

On August 3, 2012, Plaintiff underwent a nuclear imaging scan that revealed shoulder arthritis, and minimal arthritis in Plaintiff's knees.  (R. 485).  A shoulder X-ray completed that same day showed calcific tendinosis of Plaintiff's rotator cuff and mild degenerative changes to Plaintiff's acromioclavicular ("AC joint") joint.  (R. 484).

Plaintiff received treatment with Theodore Merletti, D.P.M. ("Dr. Merletti") a podiatrist, from August 27, 2012 until January 28, 2013.  (R. 504-10).

On September 10, 2012, Donald Nenno, M.D. ("Dr. Nenno") an orthopedist, completed a consultative examination on Plaintiff for Plaintiff's shoulder and knee pain, and opined that Plaintiff had relatively asymptomatic arthritis of the right knee and AC joint.  (R. 495).

Plaintiff returned to Dr. Anand on November 15, 2012, with reports of mild tenderness in Plaintiff's cervical spine and low back pain.  (R. 500).

On December 12, 2012, Dr. Chaudhuri completed a medication review for Plaintiff.  (R. 521).

On January 11, 2013, Prem K. Tambar, M.D. ("Dr. Tambar") a rheumatologist, completed a consultative examination of Plaintiff and noted mild to moderately advanced degenerative joint disease of Plaintiff's knees, and degenerative changes in Plaintiff's lumbar spine.  Dr. Tambar opined that Plaintiff's right knee would require surgery in the future.  (R. 513).

Plaintiff visited Dr. Merletti on January 22, 2013, for bilateral heel pain.  Upon examination, Dr. Merletti noted that Plaintiff exhibited decreased ankle motion, pain along the plantar fascia tendon, and weak pulses, leading Dr. Merletti to diagnose fascial fibromatosis (foot tumors), and prescribed night splints for Plaintiff.  (R. 517).

## DISCUSSION

**1.    Disability Determination Under the Social Security Act**

An individual is entitled to disability insurance benefits under the Social Security Act if the individual is unable

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . ..  An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. §§ 423(d)(1)(A) & (2)(A), and 1382c(a)(3)(A) & (C)(I).

Once a claimant proves that he or she is severely impaired and unable to perform any past relevant work, the burden shifts to the Commissioner to prove there is alternative employment in the national economy suitable to the claimant. *Parker v. Harris,* 626 F.2d 225, 231 (2d Cir. 1980).

## A.    <u>Standard and Scope of Judicial Review</u>

The standard of review for courts reviewing administrative findings regarding disability benefits, 42 U.S.C. §§ 401-34 and 1381-85, is whether the administrative law judge's findings are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence requires enough evidence that a reasonable person would "accept as adequate to support a conclusion." *Consolidated Edison Co. v. National Labor Relations Board*, 305 U.S. 197, 229 (1938).

When evaluating a claim, the Commissioner must consider "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability (testified to by the claimant and others), and . . . educational background, age and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)). If the opinion of the treating physician is supported by medically acceptable techniques and results from frequent examinations, and the opinion supports the administrative record, the treating physician's opinion will be given controlling weight. *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993); 20 C.F.R. § 404.1527(d); 20 C.F.R. § 416.927(d).

The Commissioner's final determination will be affirmed, absent legal error, if it is supported by substantial evidence. *Dumas,* 712 F.2d at 1550; 42 U.S.C. §§ 405(g) and

1383(c)(3).  "Congress has instructed . . . that the factual findings of the Secretary,[1] if supported by substantial evidence, shall be conclusive."  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability insurance benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982).  The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  If the claimant is engaged in such activity the inquiry ceases and the claimant is not eligible for disability benefits.  *Id.* The next step is to determine whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities as defined in the applicable regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Absent an impairment, the applicant is not eligible for disability benefits.  *Id.*  Third, if there is an impairment and the impairment, or an equivalent, is listed in Appendix 1 of the regulations and meets the duration requirement, the individual is deemed disabled, regardless of the applicant's age, education or work experience, 20 C.F.R. §§ 404.1520(d) and 416.920(d), as, in such a case, there is a presumption the applicant with such an impairment is unable to perform substantial gainful activity.[2]  42 U.S.C. §§

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

[2] The applicant must meet the duration requirement which mandates that the impairment must last or be expected to last for at least a twelve-month period.  20 C.F.R. §§ 404.1509 and 416.909.

423(d)(1)(A) and 1382(c)(a)(3)(A); 20 C.F.R. §§ 404.1520 and 416.920. *See also*

*Cosme v. Bowen*, 1986 WL 12118, * 2 (S.D.N.Y. 1986); *Clemente v. Bowen*, 646

F.Supp. 1265, 1270 (S.D.N.Y. 1986).

However, as a fourth step, if the impairment or its equivalent is not listed in

Appendix 1, the Commissioner must then consider the applicant's "residual functional

capacity" and the demands of any past work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If

the applicant can still perform work he or she has done in the past, the applicant will be

denied disability benefits. *Id.* Finally, if the applicant is unable to perform any past

work, the Commissioner will consider the individual's "residual functional capacity," age,

education and past work experience in order to determine whether the applicant can

perform any alternative employment. 20 C.F.R. §§ 404.1520(f), 416.920(f). *See also*

*Berry,* 675 F.2d at 467 (where impairment(s) are not among those listed, claimant must

show that he is without "the residual functional capacity to perform [her] past work"). If

the Commissioner finds that the applicant cannot perform any other work, the applicant

is considered disabled and eligible for disability benefits. 20 C.F.R. §§ 404.1520(g),

416.920(g). The applicant bears the burden of proof as to the first four steps, while the

Commissioner bears the burden of proof on the final step relating to other employment.

*Berry,* 675 F2d at 467. In reviewing the administrative finding, the court must follow the

five-step analysis to determine if there was substantial evidence on which the

Commissioner based the decision. *Richardson*, 402 U.S. at 410.

**B.** **<u>Substantial Gainful Activity</u>**

The first inquiry is whether the applicant engaged in substantial gainful activity.

"Substantial gainful activity" is defined as "work that involves doing significant and

10

productive physical or mental duties" done for pay or profit.  20 C.F.R. § 404.1510(a)(b).

Substantial work activity includes work activity that is done on a part-time basis even if it

includes less responsibility or pay than work previously performed.  20 C.F.R. §

404.1572(a).  Earnings may also determine engagement in substantial gainful activity.

20 C.F.R. § 404.1574.  In the instant case, the ALJ determined that Plaintiff had not

engaged in substantial gainful activity since August 10, 2011, the date of Plaintiff's

alleged onset of disability.  (R. 15).  Plaintiff does not contest this determination.

**C.**    <u>**Severe Physical or Mental Impairment**</u>

The second step of the analysis requires a determination whether Plaintiff had a

severe medically determinable physical or mental impairment that meets the duration

requirement in 20 C.F.R. § 404.1509 and significantly limits the Plaintiff's ability to do

"basic work activities."  The Act defines "basic work activities" as "abilities and aptitudes

necessary to do most jobs," and includes physical functions like walking, standing,

sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing,

hearing, and speaking; understanding, carrying out, and remembering simple

instructions; use of judgment; responding appropriately to supervision, co-workers and

usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§

404.1521(b) ("§ 1521"), 416.921(b).

In this case, the ALJ determined that Plaintiff had the severe impairments of

diabetes mellitus, obesity, degenerative changes of the lumbar spine, knees, and right

shoulder, migraine headaches, plantar fasciitis of both feet, and major depressive

disorder, but that Plaintiff's carpal tunnel syndrome status post bilateral release, diabetic

neuropathy, neck pain and seizures were not severe impairments as defined under 20

C.F.R. § 404.920(c), and that none of Plaintiff's severe impairments, either alone or in combination met or equaled a listed impairment. (R. 15-17). Plaintiff contends that the ALJ's step two disability finding is erroneous as the ALJ's failure to consider Plaintiff's carpal tunnel syndrome as a severe impairment resulted in a flawed residual functional capacity assessment of Plaintiff and incomplete hypotheticals posed by the ALJ to the VE during the administrative hearing. Plaintiff's Memorandum at 9-10. Plaintiff points to evidence of Plaintiff's carpal tunnel release surgery in support of Plaintiff's contention that the ALJ was required to obtain Plaintiff's operative and post-operative records prior to making a step two severity determination. Plaintiff's Memorandum at 10-11. Defendant maintains that no error can be attributed to the ALJ's step two findings, as the ALJ's finding is supported by substantial evidence in the record, Plaintiff's testimony that her hand neuropathy is a result of Plaintiff's diabetes, and the ALJ's consideration of Plaintiff's limitation to fingering in the ALJ's residual functional capacity assessment. Defendant's Memorandum at 20-22.

Step two of the disability review analysis may do nothing more than screen out *de minimus* claims, *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995), and a finding of a non-severe impairment should be made only where the medical evidence establishes only a slight abnormality which would have no more than a minimal effect on the claimant's ability to work. *Rosario v. Apfel,* 1999 WL 294727, at *5 (E.D.N.Y. March 19, 1999) (quoting Social Security Ruling ("SSR") 85-28, 1985 WL 56856). Step two severity determinations require ALJs to complete a careful evaluation of medical findings to inform the ALJ's judgment as to each impairment's limiting effects on the claimant's physical and mental abilities to perform basic work activities, using medical

evidence to assess the effects the claimant's impairments have on the claimant's ability to complete basic work activities.  *See* S.S.R. 85-28, 1985 WL 56856, at *4 (1985).  An ALJ's failure to account for a claimant's impairment does not normally require remand where substantial evidence supports the mere presence of the impairment, and the ALJ accounts for the impairment within the ALJ's residual functional capacity assessment. *See Lowe v. Colvin,* 2016 WL 624922, at *2 (W.D.N.Y. Feb. 17, 2016).  In this case, the ALJ properly found Plaintiff's carpal tunnel syndrome a non-severe impairment.

While the regulations require ALJs consider impairments that a claimant states that he has, or those "about which [the ALJ] receive[s] evidence" *see* 20 C.F.R. § § 404.1512(a); 416.912(a), in this case, the ALJ included consideration of Plaintiff's history of carpal tunnel syndrome.  Specifically, the ALJ noted that no evidence established that Plaintiff's carpal tunnel syndrome had re-occurred after Plaintiff's release surgery in 2009, a finding supported by Dr. Balderman's opinion that Plaintiff's finger and hand dexterity were intact, and that Plaintiff's grip strength measured five out of five on a five-point scale.  (R. 15).  Substantial evidence thus supports the ALJ's finding that Plaintiff's carpal tunnel syndrome was not a severe impairment under step two of the ALJ's disability analysis.  Plaintiff's motion on this issue thus is without merit.

## D.    Listing of Impairments, Appendix 1

The third step is to determine whether a claimant's impairment or impairments are listed in the regulations at Appendix 1 of 20 C.F.R. Pt. 404, Subpt. P ("The Listing of Impairments").  If the impairments are listed in the Appendix, and the duration requirement is satisfied, the impairment or impairments are considered severe enough to prevent the claimant from performing any gainful activity and the claimant is

considered disabled.  20 C.F.R. §§ 404.1525(a), 416.925(a); *Melville v. Apfel*, 198 F.3d. 45, 51 (2d Cir. 1999) ("if the claimant's impairment is equivalent to one of the listed impairments, the claimant is considered disabled").  The relevant listings of impairments in this case include 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 1.04 ("§ 1.04") (Disorders of the spine), 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 1.02 ("§ 1.02") (Major dysfunction of a joint), 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 11.14 ("§ 11.14") (Neurological impairments – peripheral neuropathies),  and 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 12.04 ("§ 12.04") (Affective Disorders).  Plaintiff does not contest the ALJ's findings under step three of the disability review process.

HALLEX[7]

In this case the ALJ assigned "great" weight to the opinion of Dr. Balderman's opinion that Plaintiff had minimal functional limitations, and "some" weight to Dr. Jensen's psychiatric evaluation of Plaintiff.  (R. 24-25).

Plaintiff contends that the ALJ failed to include Dr. Richter's opinion that Plaintiff was unable to work, put forth on September 1, 2010, nearly one year before Plaintiff's alleged onset date of disability, and that the ALJ violated HALLEX I-2-6-58 by not admitting evidence of Plaintiff's carpal tunnel syndrome from January 1, 2009 into the record.  Plaintiff's Memorandum at 13; Plaintiff's Reply Memorandum at 8.  Defendant maintains that the ALJ was not required to include the findings of Dr. Richter in the ALJ's disability determination as Dr. Richter's opinion predated Plaintiff's eligible date of

---

[7] HALLEX refers to the Hearings, Appeals and Litigation Law Manual, an internal manual used by the Social Security Administration. *See* 1993 WL 643036 (last updated May 1, 2017).

disability by nearly a year, and was inconsistent with other evidence in the record. Defendant's Memorandum at 26.

The Second Circuit has not addressed the issue of whether HALLEX has legal force and is binding in the instant proceeding. *See Edwards v. Astrue*, 2011 WL 3490024, at *6 (D. Conn. Aug. 10, 2011("although the Second Circuit Court of Appeals has not reached the issue, other circuits and Second Circuit district courts have found that HALLEX policies are not regulations and therefore not deserving of controlling weight").   Assuming, *arguendo*, that misapplication of HALLEX would constitute legal error, no violation of HALLEX I-2-6-58 occurred in this case.

HALLEX I-2-6-58 provides ALJs "will generally admit into the record any information he or she determines is material to the issues in the case" and that "[i]nformation is material if it is relevant[.]" "[Evidence that] may be material to a claim for disability [includes] [e]vidence dated within 12 months of the alleged onset date under a title II application."  1993 WL 643036 (last updated May 1, 2017).  In this case, during the administrative hearing held on March 1, 2013, the ALJ admitted Plaintiff's Exhibits B1A through B9B, B1D, B2D, B1E through B12E, and B13E into the record, exhibits that include administrative documents related to Plaintiff's claim and Plaintiff's medical records (R. 35), at which time Plaintiff's attorney confirmed that all of the evidence was admitted into the record (R. 36).  No violation of HALLEX I-2-6-58 therefore occurred. Plaintiff's motion on this issue is without merit.

Consultative opinions

Plaintiff further alleges that the ALJ was required to obtain a treating or consultative opinion after November 30, 2011, the date of Drs. Balderman and Jensen's

consultative opinions.  Plaintiff's Memorandum at 13.  Defendant maintains that Plaintiff's argument is unavailing as Dr. Peril reviewed the Plaintiff's medical record on May 12, 2012 (R. 440), and substantial evidence in the record establishes that Plaintiff's medical condition remained unchanged after November 30, 2011.  Defendant's Memorandum at 25.

Dr. Peril's review of Plaintiff's medical records was conducted on May 12, 2012, (R. 440), and no evidence in the record after that date (R. 563, 391. 497-500, 437, 519-20, 484, 504-510, 521), supports that Plaintiff's condition deteriorated enough to require the ALJ to seek a second consultative opinion.  *See Lauber v. Colvin,* 2015 WL 4600356, at *5 (W.D.N.Y. July 29, 2015) (no obligation for ALJ to supplement record with medical source statement form treating physician where ALJ has all of claimant's treating physician's treatment notes and consultative opinions that support the ALJ's residual functional capacity assessment).  Moreover, the discretion of whether to contact a consultative examiner lies with the ALJ, and nothing in the Act requires ALJs to re-contact consultative examiners.  *See* 20 C.F.R. § 416.912(b)(2); 20 C.F.R. § 416.919a.  As such, Plaintiff's motion on this issue is without merit.

<u>Treating Physician Rule</u>

Plaintiff next contends that the ALJ violated the treating physician rule by ignoring the opinion of Dr. Richter, Plaintiff's treating physician, who opined that Plaintiff was unable to work during Plaintiff's lifetime (R. 240), and that the ALJ was required to contact Dr. Richter for clarification of his opinion.  Plaintiff's Memorandum at 13. Defendant maintains that no error is raised by the ALJ's failure to discuss the opinion of Dr. Richter as Dr. Richter's opinion predates Plaintiff's alleged onset date by nearly a

year, and that Dr. Richter's opinion on Plaintiff's disability is a conclusory opinion

reserved to the Commissioner.  Defendant's Memorandum at 26.  The undersigned

proceeds to review Plaintiff's allegations under the rules set forth under 20 C.F.R. §

416.927(c) (§ 416.927(c)"),[8] the treating physician's rule.

Under 20 C.F.R. § 416.927(c), ALJs are required to consider the following factors

in weighing medical opinions of treating and non-treating physicians, and provide

reasons for the weight assigned to each medical opinion:

> (1) Examining relationship
> (2) Treatment relationship
> (3) Supportability
> (4) Consistency
> (5) Specialization
> (6) Other relevant factors

20 C.F.R. § 416.927(c).

As relevant, 20 C.F.R. § 416.927(e)(2)(ii) provides

> When an administrative law judge considers findings of a State agency  medical
> or psychological consultant or other program physician, psychologist; or other
> medical specialist, the administrative law judge will evaluate the findings using
> the relevant factors in paragraphs (a) through (d) of this section, such as the
> consultant's medical specialty and expertise in our rules, the supporting evidence
> in the case record, supporting explanations the medical or psychological
> consultant provides, and any other factors relevant to the weighing of the
> opinions.

Accordingly, the treating physician rule provides the framework for reviewing agency

consultant findings.

It is the responsibility of the ALJ to weigh the record evidence and determine

which medical source opinion is supported by medical evidence in the record and

---

[8] For claims filed on or after March 27, 2017, § 416.927 no longer applies, but has been replaced by 20
C.F.R. § 416.920c.

deserves more weight.  *See Balsamo v. Chater,* 142 F.3d 75, 81 (2d Cir. 1998) (where medical opinions are inconsistent, ALJ's have discretion to apportion weight to the opinions). Here, while Plaintiff correctly asserts that the ALJ includes no findings on Dr. Richter's opinion that Plaintiff was unable to work (R. 240), the court finds no error in the ALJ's decision.

In particular, Plaintiff's alleged date of disability onset is August 10, 2011 (R. 162), and Dr. Richter's opinion was put forth on put forth on September 1, 2010.  (R. 240).  "While evidence of [a claimant's] condition prior to the [alleged disability] onset date . . . is to be considered by the ALJ in furtherance of evaluating whether the [claimant] qualifies for benefits, the period between onset of disability and expiration of insured status is the focus of the inquiry,"  *see Ward v. Shalala,* 898 F. Supp. 261, 263 (D. Del. 1995), and the ALJ is entitled to weigh all of the evidence available to make residual functional capacity findings that are consistent with the record as a whole.  *See Matta v. Astrue,* 508 Fed. App'x. 53, 56 (2d Cir. 2013).  Accordingly, no error results from the ALJ's decision not to include Dr. Richter's opinion that Plaintiff was unable to work during Plaintiff's lifetime proffered before Plaintiff's onset date, and Plaintiff's motion on this issue is without merit.

**E.    Suitable Alternative Employment in the National Economy**

Once an ALJ finds a disability claimant does not have a severe medically determinable physical or mental impairment, 20 C.F.R. § § 404.1520(a)(4)(ii), that significantly limits the claimant's physical and mental ability to do work activities, *Berry*, 675 F.2d at 467, and the claimant is not able, based solely on medical evidence, to meet the criteria established for an impairment listed under Appendix 1, the burden

shifts to the Commissioner to show that despite the claimant's severe impairment, the claimant has the residual functional capacity to perform alternative work, 20 C.F.R. § 404.1520(a)(4)(iv), and prove substantial gainful work exists that the claimant is able to perform in light of the claimant's physical capabilities, age, education, experience, and training.  *Parker*, 626 F.2d 225 at 231.  To make such a determination, the Commissioner must first show that the applicant's impairment or impairments are such that they nevertheless permit certain basic work activities essential for other employment opportunities.  *Decker v. Harris*, 647 F.2d 291, 294 (2d Cir. 1981). Specifically, the Commissioner must demonstrate by substantial evidence the applicant's "residual functional capacity" with regard to the applicant's strength and "exertional capabilities."  *Id.*  An individual's exertional capability refers to the performance of "sedentary," "light," "medium," "heavy," and "very heavy" work.  *Decker*, 647 F.2d at 294.  In this case, the ALJ determined that Plaintiff had the residual functional capacity to perform sedentary work with the limitations of needing to change positions at least every half hour, no work with the general public and no more than frequent contact with coworkers or supervisors.  (R. 57)

In addition to determining whether a disability claimant has the residual functional capacity to return to work, the Commissioner must establish that the claimant's skills are transferrable to the new employment if the claimant was employed in a "semi-skilled" or "skilled" job.[9]  *Id.* at 294.  This element is particularly important in determining the

---

[9] The regulations define three categories of work experience: "unskilled", "semi-skilled", and "skilled". *Decker, supra*, at 295.

    "Un-skilled" is defined as: "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.  The job may or may not require considerable strength....primary work duties are handling, feeding and offbearing (that is, placing or removing materials

second prong of the test, whether suitable employment exists in the national economy. *Id.* at 296.  Where applicable, the Medical Vocational Guidelines of Appendix 2 of Subpart P of the Regulations ("the Grids") may be used to meet the Secretary's burden of proof concerning the availability of alternative employment and supersede the requirement of VE testimony regarding specific jobs a claimant may be able to perform in the regional or national economy.  *Heckler v. Campbell*, 461 U.S. 458, 462 (1983).

Plaintiff contends that the hypothetical questions posed by the ALJ to the VE were incomplete because the ALJ failed to include functional limitations resulting from Plaintiff's bilateral carpal tunnel syndrome in the ALJ's hypothetical questions.  Plaintiff's Memorandum at 11.  As discussed, Discussion, *supra*, at 13-20, the ALJ in this case properly found Plaintiff's carpal tunnel syndrome not severe under step two of the disability analysis.  Accordingly, the ALJ was not required to include limitations from Plaintiff's carpal tunnel syndrome in hypothetical questions posed to the VE.

Significantly, the ALJ's finding that Plaintiff's diabetic neuropathy was severe under step two of the disability analysis required the ALJ to include limitations from Plaintiff's diabetic neuropathy in the hypothetical questions posed by the ALJ to the VE,

---

from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in thirty days, and little specific vocational preparation and judgment are needed.  A person does not gain work skills by doing unskilled jobs."
20 C.F.R. § 404.1568(a).

 "Semi-skilled work" is defined as: "work which needs some skilled but does not require doing the more complex work duties.  Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work.  A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks."
20 C.F.R. § 404.1568(b).

a limitation that, similar to carpal tunnel syndrome and based on Plaintiff's testimony (R. 47, 51-52), would include only occasional fingering.  Plaintiff's motion on this issue is without merit.

During the administrative hearing held on March 1, 2013, the ALJ posed a hypothetical to the VE of whether an individual, like Plaintiff, capable of a full range of light work, that would require accommodation of being able to change positions at least every half hour, with no interaction with the general public and no more than frequent contact with coworkers or supervisors  would be able to perform Plaintiff's past relevant work, to which the VE opined that Plaintiff would not be able to perform Plaintiff's past relevant work as an assembler.  (R. 57).  The ALJ then asked the VE to provide a list of jobs that an individual with the limitations contained in the first hypothetical would be capable of performing at the sedentary level, to which the VE opined such individual would be able to perform the positions of  inspector, unskilled, sedentary work with a light exertional level, with 145,000 jobs available in the national economy and 175 job positions available in the regional economy (R. 58), bench assembler, unskilled, sedentary work with 200,000 jobs available in the national economy and 600 jobs positions available in the regional economy, and laminator, an unskilled, sedentary job with 70,000 job positions available in the national economy and 65 jobs positions available in the regional economy.  (R. 58). The ALJ then asked, and the VE confirmed that the VE's testimony was consistent with the Dictionary of Occupational Titles ("DOT").  *Id.*

Nevertheless, the ALJ erred by not including the limitation to occasional fingering in hypothetical questions posed to the VE to account for limitations resulting from

Plaintiff's diabetic neuropathy and Plaintiff's testimony that she was able to lift only five pounds (R. 47), but is able to grocery shop, sweep, and fold laundry. (R. 51-52).

During the administrative hearing, Plaintiff's counsel asked the VE whether an individual, similar to Plaintiff, with all of the limitations posed to the VE within the ALJ's previously posed hypothetical and an added limitation of only occasional fingering, would be able to perform the jobs listed by the VE, to which the VE opined the additional limitation would degrade the individual's ability to successfully perform any of the jobs. (R. 60).

An ALJ's error to not include all of a claimant's limitations within hypothetical questions posed to a VE normally requires remand. In this case, however, remand would serve no useful purpose, as jobs exist that Plaintiff, with all of the limitations put forth to the VE by the ALJ and the additional limitation of occasional fingering, would be able to perform. One such job includes surveillance system monitor (DOT 379.367-010, sedentary, unskilled, SVP 2). *See Medick v. Commissioner of Social Security,* 2012 WL 5499447, at *14 (N.D.N.Y. June 22, 2012) (suggesting jobs that require no fingering that include DOT 379.367-010 surveillance system monitor).

The Act provides:

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him . . .

42 U.S.C §§ 423(d)(2)(A), 1382c(a)(3)(B).

As such, jobs exist in the regional and national economy that Plaintiff is capable of performing and substantial evidence supports that despite the fact that the VE did not include such engagement in the VE's opinion that Plaintiff is capable of performing sedentary work, Plaintiff is not disabled. *Medick,* 2012 WL 54994447, at *14 (remand not required where the ALJ's hypothetical questions to the VE are supported by substantial evidence and jobs exist that the claimant is capable of performing).

## <u>CONCLUSION</u>

Based on the foregoing, Defendant's motion (Doc. No. 16) should be GRANTED; Plaintiff's motion for remand for calculation of benefits (Doc. No. 18) should be DENIED, and the Clerk of the Court should be instructed to close the file.

Respectfully submitted,

/s/ *Leslie G. Foschio*

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:     June 26, 2017
           Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

      **ORDERED** that the Report and Recommendation be filed with the Clerk of the

Court.

      **ANY OBJECTIONS** to the Report and Recommendation must be filed with the

Clerk of the Court within fourteen (14) days of service of the Report and

Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of

the Federal Rules of Civil Procedure and Local Rule 72.3.

      <u>**Failure to file objections within the specified time or to request an**</u>

<u>**extension of such time waives the right to appeal the District Court's Order.**</u>

*Thomas v. Arn ,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services ,* 892

F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited ,* 838 F.2d 55 (2d Cir. 1988).

      Let the Clerk send a copy of the Report and Recommendation to the attorneys

for the Plaintiff and the Defendant.

SO ORDERED.

                       /s/ *Leslie G. Foschio*
                   ————————————————————
                       LESLIE G. FOSCHIO
               UNITED STATES MAGISTRATE JUDGE


DATED:      June 26, 2017
              Buffalo, New York