```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LEAANN L. TERRANCE,
                    Plaintiff,        **DECISION AND ORDER**
                                      **No. 1:14-cv-00708(LGF)(MAT)**
    -vs-

CAROLYN COLVIN, Acting Commissioner
of Social Security,

                    Defendant.
_____
```

## I. Introduction

This matter comes before the Court following a Report and Recommendation (Dkt #21) filed on June 26, 2017, by the Honorable Leslie G. Foschio, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72(b) and (c) of the Western District of New York. In his Report and Recommendation ("R&R"), Judge Foschio recommended that the decision issued by defendant Carolyn Colvin, Acting Commissioner of Social Security[1] ("Defendant" or "the Commissioner") denying Supplemental Security Income ("SSI") benefits to Leaann L. Terrance ("Plaintiff" or "Terrance") be affirmed in full, that the Commissioner's motion for judgment on the pleadings be granted, and that Plaintiff's motion for judgment on the pleadings be denied. In pertinent part, the R&R found that substantial evidence supported the conclusion by the

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

administrative law judge ("ALJ") that Plaintiff's carpal tunnel syndrome was not a severe impairment at step two (see R&R at 13), and that the ALJ's error in failing to include manipulative limitations in the residual functional capacity ("RFC") assessment was harmless (see R&R at 22), and that the ALJ properly developed the record (see R&R at 15-16).

Plaintiff filed Objections to the Report and Recommendation ("Pl's Obj.") (Dkt #22). Defendant filed a Response to Plaintiff's Objections (Dkt #24)), and Plaintiff filed a Reply (Dkt #28).

In her Objections, Plaintiff has asserted the following arguments: the R&R erred in finding that the ALJ did not err at step two in concluding that bilateral carpal tunnel syndrome is not a severe impairment; the R&R erred in finding that the ALJ's failure at steps four and five to include manipulative limitations is harmless; the R&R erred in declining to remand the matter so that the ALJ could obtain a treating source opinion. The Court will discuss the administrative record, including Plaintiff's medical history and the ALJ's decision, only insofar as is necessary to the resolution of whether Plaintiff's objections have merit.

For the reasons set forth herein, the Court adopts the R&R's recommendation that Defendant's decision denying benefits be affirmed.

**II. Standard of Review**

When reviewing a magistrate judge's report and recommendation, a district court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made[,]" 28 U.S.C. § 636(b), and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge[,]" id. Where no "specific written objection" is made to portions of the magistrate judge's report, the district court may adopt those portions, "as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law." Eisenberg v. New England Motor Freight, Inc., 564 F. Supp.2d 224, 226 (S.D.N.Y. 2008) (citing Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 149 (1985); other citation omitted). The district court is not required to review any portion of a magistrate judge's report that is not the subject of an objection. Eisenberg, 564 F. Supp.2d at 227 (citing Thomas, 474 U.S. at 149).

**III. Discussion**

    **A.    Plaintiff's First Objection**

        **1.    Erroneous Step Two Severity Determination**

Plaintiff objects to the R&R's findings that the ALJ properly concluded, at step two, that her bilateral carpal tunnel syndrome is not a severe impairment (see R&R at 13), and that any error at

steps four and five in failing to include manipulative limitations was harmless (see R&R at 22).

At step two, the ALJ determined that Plaintiff has the "severe" impairments of diabetes mellitus; obesity; degenerative changes of the lumbar spine, knees, and right shoulder; migraine headaches; bilateral plantar fasciitis; and major depressive disorder. The ALJ found that Plaintiff's carpal tunnel syndrome status post bilateral release, diabetic neuropathy, neck pain, and seizures were not "severe" impairments as defined in 20 C.F.R. § 404.920(c). The R&R found the ALJ's step two finding regarding Plaintiff's bilateral carpal tunnel syndrome was supported by substantial evidence. (See R&R at 13). In particular, the R&R stated that the ALJ properly noted that "no evidence established that Plaintiff's carpal tunnel syndrome had recurred after Plaintiff's release surgery in 2009, a finding supported by [consultative physician] Dr. [Samuel] Balderman's opinion that Plaintiff's finger and hand dexterity were intact, and that Plaintiff's grip strength measured five out of five on a five-point scale." (R&R at 13) (citation to record omitted).

In assessing the severity of a claimant's physical impairment, the Regulations require that, for an impairment to be found "severe," it must "significantly limit [a claimant's] physical . . . ability to do basic work activities." 20 C.F.R. § 416.921(a). After independently reviewing the record, the Court agrees with the

R&R that the ALJ's step two finding as to Plaintiff's carpal tunnel syndrome status post bilateral release is supported by substantial evidence. The record indicates that Plaintiff successfully underwent two surgeries to remedy her bilateral carpal tunnel syndrome; she had a right carpal tunnel release on December 3, 2008 (T.77),[2] and a left carpal tunnel release on January 21, 2009 (T.76). In February of 2011, six months prior to the beginning of the relevant disability period, Plaintiff informed her primary care physician, Dr. Mark Richter, that she was having some numbness in her hands. (T.248). After reviewing a January 2011 electromyogram ("EMG"), Dr. Richter was concerned that it appeared to show a recurrence of carpal tunnel syndrome. (T.248). He then referred Plaintiff to Dr. Peter Janevski, a hand surgeon. (T.248, 250). Plaintiff informed Dr. Janevski that she was having pain in her hands and numbness in her fingers, with no symptoms at nighttime. (T.245). Dr. Janevski's physical examination of Plaintiff's hands and wrists was normal: She had full range of motion; she had no tenderness or triggering of her fingers; she had normal circulation; and Tinel's sign, Phalen's test, and compression tests all were negative in both hands. (T.245). Dr. Janevski reviewed the January 2011 EMG and noted that it showed only mild carpal tunnel syndrome with significant improvement since 2008. (T.245, 324-26).

---

[2] Numerals in parentheses preceded by "T." refer to pages from the transcript of the administrative record.

Dr. Janevski explained the EMG findings to Plaintiff, and informed her that she did *not* have recurrent carpal tunnel syndrome, that she was doing "quite well after the surgery," and that she did "not require any further treatment for carpal tunnel syndrome." (T.245). Dr. Janevski informed Plaintiff that she "would not qualify for [Social Security] disability concerning her carpal tunnel syndrome." (T.245). Notably, Dr. Janevski explained that the tingling in Plaintiff's fingers was most likely related to her diabetes, and pointed out that her blood sugar was not well controlled. (T.245). Substantial evidence, including the results of clinical testing, objective imaging, and the medical expert opinion of Dr. Janevski, establish that Plaintiff it was not carpal tunnel syndrome status post bilateral release that was causing her alleged pain and numbness in her hands; rather, if anything, it was her diabetic neuropathy. Therefore, there is substantial evidence to support the ALJ's finding that Plaintiff's carpal tunnel syndrome status post bilateral release is not "severe," because this condition does not "significantly limit [her] physical . . . ability to do basic work activities." Accordingly, the Court finds Plaintiff's objection to the step two severity determination to be without merit.

### 2. Omission of Limitation to Occasional Fingering at Steps Four and Five

The R&R went on to find that because the ALJ found that Plaintiff's diabetic neuropathy was a "severe" impairment at step

-6-

two, the ALJ was "required . . . to include limitations from Plaintiff's diabetic neuropathy in the hypothetical questions posed by the ALJ to the VE [vocational expert], a limitation that, similar to carpal tunnel syndrome and based on Plaintiff's testimony ([T].47, 51-52), would include only occasional fingering." (R&R at 20-21). The R&R found that this error was harmless, however, by sua sponte finding that "jobs exist that Plaintiff, with all of the limitations put forth to the VE by the ALJ and the additional limitation of occasional fingering, would be able to perform. One such job includes surveillance system monitor (DOT 379.367-010, sedentary, unskilled, SVP 2)." (R&R at 22) (citing Medick v. Comm'r of Soc. Sec., No. 5:11-CV-851 (GTS/ATB), 2012 WL 5499447, at *14 (N.D.N.Y. June 22, 2012)).

Plaintiff argues that the conclusion of the R&R that any error in including manipulative limitations in the RFC was harmless because the job of surveillance system monitor "has a checkered and suspect history in the case law." (Pl's Obj. at 4). Plaintiff's objection has merit to the extent that the R&R erroneously engaged in fact-finding reserved to the Commissioner. However, the objection provides no basis for reversing the Commissioner's decision because the underlying premise—that diabetic neuropathy was found to be a "severe" impairment—is contrary to the record. The ALJ specifically found, at step two, that Plaintiff's diabetic neuropathy was not a "severe" impairment. After noting that

Plaintiff "allege[d] diabetic neuropathy with some numbness and tingling in her hands and problems causing her to drop things." (T.15). However, the ALJ determined, "this is inconsistent with the consultative examiner [Dr. Balderman]" who "found an unremarkable neurological examination (Exhibit B10F, page 3)[,]" with "no sensory deficit" and full strength (5/5) in her upper and lower extremities." (T.15). The ALJ observed that there was "no objective evidence . . . , such as an electrodiagnostic study, which would confirm a diagnosis of diabetic neuropathy." (T.15).

In sum, although the Court disagrees with the R&R's analysis at pages 20 to 23 regarding Plaintiff's diabetic neuropathy and declines to adopt the findings discussed therein, the Court also finds Plaintiff's arguments concerning the hypotheticals posed to the VE to be without merit.

### B. Plaintiff's Second Objection

Plaintiff argues that the R&R erroneously concluded that the ALJ fulfilled his obligation to develop the record and did not err in declining to attempt to supplement the record with a medical source statement from one of Plaintiff's treating physicians.

In essence, Plaintiff objects because the ALJ's RFC assessment does not track a specific medical opinion. Plaintiff notes that the ALJ gave "great weight" only to Dr. Balderman's opinion, which found "minimal physical limitations (T.356)," but then the ALJ did not adopt any specific limitations from Dr. Balderman's opinion.

-8-

Plaintiff asserts that the actual RFC (light work with the ability to change position at least every 30 minutes) bears "no similarity" to Dr. Balderman's opinion. (Pl's Obj. at 7). Plaintiff further contends that the RFC was not based on State agency review consultant Dr. Peril's opinion because the ALJ specifically gave that opinion less weight. (T.24). Plaintiff asserts that since the ALJ "did not adopt any limitations from Dr. Balderman and rejected Dr. Peril's opinion[,]" the ALJ "interpreted the medical findings on his own, which is an obvious legal error." (Pl's Obj. at 7).

During his consultative examination, Dr. Balderman observed that both Plaintiff's cervical spine and lumbar spine showed full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally. (T.355). Straight-leg raising ("SLR") test was negative bilaterally, and Plaintiff had full range of motion in her shoulders, elbows, forearms, wrists, hips, knees, and ankles bilaterally. (Id.). Neurologically, Plaintiff's deep tendon reflexes were physiologic (normal) and equal in the upper and lower extremities, with no sensory deficits noted. Plaintiff had full strength in her upper and lower extremities. With regard to fine motor activity in her hands, Dr. Balderman found that her hand and finger dexterity was intact, with full grip strength bilaterally. (T.356). A back x-ray performed that day was negative. For his medical source statement, Dr. Balderman opined that Plaintiff "has minimal physical limitations." (Id.).

Contrary to Plaintiff's contention, it does not follow that she is entitled to a reversal based on the failure of the ALJ's RFC assessment to conform exactly to a specific medical opinion. While an "ALJ cannot arbitrarily substitute his own judgment for a competent medical opinion[,]" Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999) (citation omitted), "[t]here is no requirement that the agency accept the opinion of a consultative examiner concerning a claimant's limitations[.]" Pellam v. Astrue, 508 F. App'x 87, 89 (2d Cir. 2013) (unpublished opn.) (finding that ALJ properly declined to credit certain conclusions in consultative examiner's opinion that were inconsistent with other evidence of record). "Although [an] ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he [is] entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (unpublished opn.) (citing Richardson v. Perales, 402 U.S. 389, 399 (1971) ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict.")).

After reviewing the record, the Court concludes that Dr. Balderman's medical source statement is supported by his clinical findings and is not inconsistent with the ALJ's RFC assessment concluding that Plaintiff had the ability to perform "light" work

provided that she was able to change positions at least every 30 minutes during an 8-hour workday.³ If anything, Dr. Balderman's medical source statement arguably could support an RFC assessment that assigns to Plaintiff the ability to perform work at a heavier exertional level.

Likewise, the ALJ's failure to adopt Dr. Peril's limitations regarding Plaintiff's manual dexterity was supported by substantial evidence, discussed above in the context of Plaintiff's objection regarding the step two severity determination.

Plaintiff argues that the ALJ's error in allegedly "playing doctor" was especially harmful because treating physician Dr. Richter opined on September 1, 2010, that Plaintiff was unable to work because of her diabetes, neck pain with neuropathy of the arms, and migraine headaches, as well as the medications she uses to control her symptoms. (T.238). Plaintiff concedes that the opinion was stale, but argues that it should have prompted the ALJ, after declining to fully adopt Dr. Balderman's or Dr. Peril's opinion, to request an RFC assessment from one of Plaintiff's treating physicians.

Dr. Richter's opinion predated the relevant period by almost a year, and it was inconsistent with the essentially normal

---

³ The ALJ also imposed certain nonexertional limitations (unable to work with the general public, no more than frequent contact with coworkers and supervisors, and simple, routine tasks with no more than occasional changes in the work setting), which are not challenged here.

physical examinations of record, including Dr. Richter's own physical examinations of Plaintiff. (See T.245, 248, 250-51, 256, 305, 311, 313, 315-16, 354-56, 386, 394, 410-11, 414-17, 422-23, 434-35, 457-62, 494-95, 497-500, 519, 552, 554, 556). Indeed, Dr. Richter informed Plaintiff on September 1, 2010, that "it may be difficult for her to qualify for complete disability with her medical conditions." (T.257). Furthermore, Dr. Richter's medical source statement was not entitled to any particular significance or weight because it consisted of an opinion on the issue of whether Plaintiff was disabled, a question reserved to Defendant. (See T.238 (Dr. Richter opined only that Plaintiff was "unable to work")).

Plaintiff next argues that the ALJ had a duty to further develop the record by affirmatively requesting a medical opinion because there is no opinion from a treating source with regard to the relevant time period. The Second Circuit has held that "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,'" and therefore the ALJ was "under no obligation to seek additional information in advance of rejecting a benefits claim." Rosa, 168 F.3d at 79 n. 5 (quoting Perez v. Chater, 77 F.3d 41, 48 (2d Cir. 1996)). Thus, the Second Circuit "does not always treat the absence of a medical source statement from [a] claimant's treating physicians as fatal to the ALJ's determination[.]" Swiantek v.

Comm'r of Soc. Sec., 588 F. App'x 82, 84 (2d Cir. 2015) (summary order) (citing Tankisi v. Comm'r of Soc. Sec., 521 F. App'x 29, 33-34 (2d Cir. 2013) (summary order) (noting that while 20 C.F.R. §§ 404.1513(b)(6), 416.913(b)(6) state that the Commissioner "*will* request a medical source statement" from a claimant's treating physician, they also state that the "lack of the medical source statement will not make the report incomplete"). After reviewing the record, the Court finds that this is not a case where the absence of a medical source statement from a treating source made the record incomplete. Physical examinations of Plaintiff are largely normal and are longitudinally consistent, with some pre-dating the December 2011 hospitalization and some post-dating the hospitalization. (See T.245, 248, 250-51, 256-57, 305, 311, 313, 315-16, 354-56, 386, 394, 410-11, 414-17, 422-23, 434-35, 457-62, 494-95, 497-500, 519, 552, 554, 556). Moreover, the notes from treating physicians such as Dr. Richter do not demonstrate clinical findings that would support an RFC assessment more restrictive than that found by the ALJ. Given that Dr. Peril's opinion based on a review of the record was inconsistent with Dr. Balderman's clinical findings, and that the ALJ also had all of the treatment notes from Plaintiff's treating physicians which were largely consistent and stable over time, the Court cannot find that the ALJ had any further obligation to supplement the record by

acquiring a medical source statement from one of the treating physicians.

## III. Conclusion

For the foregoing reasons, the Court adopts Judge Foschio's recommendation that the Commissioner's decision denying SSI benefits to Plaintiff be affirmed. Accordingly, it is hereby

**ORDERED** that Defendant's motion for judgment on the pleadings is granted, and Plaintiff's motion for judgment on the pleadings is denied.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

                                            **S/ Michael A. Telesca**

                                       HONORABLE MICHAEL A. TELESCA
                                       United States District Judge

DATED:    August 8, 2017
              Rochester, New York